GEORGE POOLE vs. MASSACHUSETTS MOHAIR PLUSH
COMPANY & others.

Middlesex.     March 4, 7, 1898. — May 17, 1898.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Construction of Contract — Parol Evidence.*

On March 27, 1891, A. entered into a written agreement with the B. Co. by which
it was to construct for him a certain loom to be approved by C., and on such
approval the company was to construct thirty-six more looms at a price to be
determined.   The agreement then proceeded : " The said B. Co. cannot build said
loom . . . for other parties excepting as hereinafter provided.   On or before the
expiration of five years from this date, said A. shall formally notify said B. Co.
of their intention to order to be built a second instalment of thirty-six or more of
said looms on or before seven years from this date, and when so ordered, said
B. Co. shall not build said looms . . . for any other party for a period of ten
years from this date.   But in case said A. fail to formally notify said B. Co. on
or before the expiration of said five years, said B. Co. shall have the privilege
of building said looms . . . for other parties after five years from this date, and
shall then be released wholly from the obligations of said ten year term ; also
said A. shall be released from their obligation to order said second instalment of
thirty-six or more of said looms."   On November 9, 1891, A. entered into a written
agreement with C. to form a corporation and to employ C. therein, and to give
him in the event of his dismissal certain royalties " to the full end of the term of
the agreement made by and between the parties of the first part (A.) " and the
B. Co. *Held*, in an action by C. against A. and the corporation on his dismissal
in 1894, no notice having been given by A. to the B. Co. of an intention to order
a second instalment of looms and no instalment having ever in fact been or-
dered, that the term continued until March 27, 1901, and that parol evidence to
show that the parties had a different intention was incompetent.

CONTRACT, to recover the amount alleged to be due under
the terms of a written agreement made by the plaintiff with
Edward P. Bliss and Henry W. Bliss, partners under the firm
name of Cushing and Bliss, and by them assigned to the Massa-
chusetts Mohair Plush Company.   Trial in the Superior Court,
without a jury, before *Gaskill*, J., who found for the plaintiff;
and the defendants alleged exceptions.   The facts appear in the
opinion.

The case was argued at the bar in March, 1898, and after-
wards was submitted on briefs to all the justices.

*R. P. Clapp*, for the defendants.

*W. S. Marshall*, for the plaintiff.

ALLEN, J.    On March 27, 1891, the two defendants, Edward P. Bliss and Henry W. Bliss, who were partners under the firm name of Cushing and Bliss, entered into a written agreement with the Crompton Loom Works, by which the latter company was to construct for them a pile wire motion loom for weaving plush goods, in such a manner as to meet the approval of Poole, the present plaintiff, who was then in the employment of Cushing and Bliss, and when said loom should be declared correct and satisfactory by Poole the said company was to construct thirty-six more looms at a price to be determined by the parties. The written agreement then proceeded as follows: " The said Crompton Loom Works cannot build said loom for weaving plush for other parties excepting as hereinafter provided.    On or before the expiration of five (5) years from this date, said Cushing and Bliss shall formally notify said Crompton Loom Works of their intention to order to be built a second instalment of thirty-six or more of said looms on or before seven (7) years from this date, and when so ordered, said Crompton Loom Works shall not build said looms for weaving plush for any other party for a period of ten (10) years from this date.    But in case said Cushing and Bliss fail to formally notify said Crompton Loom Works on or before the expiration of said five (5) years, said Crompton Loom Works shall have the privilege of building said looms for weaving plush for other parties after five (5) years from this date, and shall then be released wholly from the obligations of said ten (10) year term ; also said Cushing and Bliss shall be released from their obligation to order said second instalment of thirty-six or more of said looms."

On November 9, 1891, Cushing and Bliss entered into a written agreement with the plaintiff, by which they agreed to form a corporation to be known as the Massachusetts Mohair Plush Company, and to employ Poole as general superintendent, and to pay him a yearly salary at the rate of forty dollars a week, and as additional compensation during the time that he should remain in their employment one fifth of all the profits of the business, after a dividend of ten per cent upon the amount of money actually invested in the business ; and he was to assign

to the Plush Company all his right, title, and interest in the improvements in looms invented jointly by himself and one Wyman, and in letters patent which might be issued thereon, and also any and all improvements which he might make upon said invention while he should remain in the employment of Cushing and Bliss. It was also agreed that Poole might purchase capital stock of said Plush Company to the extent of one hundred and fifty shares, at par, from time to time. The agreement then proceeded as follows : " It is understood and agreed by the parties hereto that if the party of the second part [Poole] shall be dismissed from the employ of the parties of the first part, as general superintendent of the Massachusetts Mohair Plush Company, as aforesaid, or if the party of the second part should die or become disabled by reason of accident or sickness, then the said Massachusetts Mohair Plush Company shall pay to the party of the second part, his heirs or assigns, in lieu of salary and profits, as hereinbefore mentioned, and as a royalty fee for the use of his said improvements in looms, one cent per yard on all goods woven upon the said improved looms, to the full end of the term of the agreement made by and between the parties of the first part and Crompton Loom Works Company of Worcester, Massachusetts, whereby the parties of the first part have acquired full right to use the looms upon which the improvements aforesaid have been wrought, of which agreement the party of the second part hereby acknowledges cognizance, or until the amount so paid as royalty fees, together with any sum or sums previously invested by the party of the second part in the capital stock of Massachusetts Mohair Plush Company as aforesaid shall be sufficient to purchase the said one hundred and fifty (150) shares of the capital stock of the said company."

The plaintiff was dismissed from his position as general superintendent on June 1, 1894; and none of the defendants gave notice to the Crompton Loom Works of an intention to order a second instalment of looms, and no second instalment was ever in fact ordered. The plaintiff was duly paid all sums due to him under the above agreement down to March 27, 1896; and the defendants refused to pay anything afterwards.

The question is, What is the true meaning of the words in the agreement, " to the full end of the term of the agreement made

by and between the parties of the first part and Crompton Loom Works Company"? Did that term expire on March 27, 1896, or is it to continue until March 27, 1901?

We are of opinion that the latter is the true construction. The said parties of the first part, Cushing and Bliss, had an agreement which ran for their benefit for ten years, if they so desired. It was within their own power or option to have it so continue. The agreement was to last five years, or ten years, according as they themselves might elect or determine. It was therefore an agreement with them, at their election, for the term of ten years. There were two dates fixed at which the agreement might cease. This being so, the words "the full end of the term of the agreement" naturally signify the longer term, and the construction put upon them by the Superior Court was right.

This being the legal effect of the written agreement, parol evidence to show that the parties had a different intention was incompetent. *Marr* v. *Washburn & Moen Manuf. Co.* 167 Mass. 35.                    *Exceptions overruled.*