JOSHUA M. SEARS *vs.* BOARD OF ALDERMEN OF THE
CITY OF BOSTON & another.

Suffolk.    January 18, 19, 1899. — March 3, 1899.

Present: FIELD, C. J., HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Assessment on Abutter for Watering of Street — Constitutionality of Statute —
Validity of Proceedings.*

The St. 1897, c. 419, authorizing any city to appropriate money for watering cer-
tain public ways within its limits at the expense of the city, and also to deter-
mine that certain other public ways shall be watered at the expense of the
abutters thereon, and providing that the expense so determined to be borne by
the abutters shall be assessed upon the abutting estates in proportion to the
number of linear feet of each estate upon the street so watered, is constitutional,
as applied to occupied estates in the central portion of a large city.

If a statute authorizes a city to appropriate money for watering certain public
ways within its limits at the expense of the city, and also to determine that cer-
tain other public ways shall be watered at the expense of the abutters thereon,
and provides that the expense of watering the streets, the proportion of such
expenses to be borne by the abutters, and the rate to be assessed upon each
linear foot of frontage of estates on such streets, shall be estimated and deter-
mined by the board of aldermen, the action of the superintendent of streets in
making the assessments and reporting them to the board of aldermen, with a
communication from the mayor to the board recommending an appropriation,
and a subsequent order of the board making it, taken in connection with pre-
vious orders of the board that certain streets be watered at the expense of the
abutters, and that the superintendent of streets be authorized to determine the
amount of the assessment upon the abutting estates for such watering, are
equivalent to an original determination of these matters by the aldermen
themselves.

PETITION, against the board of aldermen and the superintend-
ent of streets of the city of Boston, for a writ of certiorari to
quash alleged erroneous assessments of taxes, made under St.
1897, c. 419.*

---

* This statute is as follows:

"Section 1.   Any city may annually appropriate money for watering the
public ways or certain public ways or portions thereof within its limits, at
the expense, in whole or in part, of the city, and may determine that certain
other public ways or portions thereof shall be watered at the expense, in
whole or in part, of the abutters thereon.

"Section 2.   If a city shall determine that the streets or certain streets
or portions of streets within its limits shall be watered, in whole or in part,
at the expense of the abutters, the expense of the watering of such streets or

The petition alleged that the petitioner was a citizen and a taxpayer of Boston, and was at the time of the acts thereinafter described the owner of several estates enumerated in an exhibit annexed; that the board of aldermen, on April 4, 1898, acting or pretending to act under the statute, passed the following order: "That all streets or portions of streets lying within the territory in the central portion of the city bounded by a red line on a plan marked 'Plan of Street Watering, Benjamin W.

---

portions of streets for that municipal year, and the proportion of such expense to be borne by abutters, and the rate to be assessed upon each linear foot of frontage of estates upon such streets or portions thereof, shall be estimated and determined by the board of aldermen, and the expense so determined of such watering to be borne by the abutters shall be assessed in the manner hereinafter provided, upon the estates abutting on such streets or portions of streets, in proportion to the number of linear feet of each estate upon the street or portion thereof so watered.

"Section 3. The amount of such assessments upon each estate shall be determined in accordance with the provisions of section two of this act, by the board of aldermen, or according as the board of aldermen may designate, by the board of public works, board of street commissioners or superintendent of streets, or by any other officer; and such board or officer shall within a reasonable time after the first day of May of that municipal year make or cause to be made a list of the streets or portions of streets which the city has determined shall be watered, which list shall specify each estate abutting upon such street or portion thereof, the number of linear feet of each estate upon such street or portion thereof, the amount per such linear foot of the assessment so authorized, and the amount of such assessment on each estate, and shall certify and commit said list to the board of assessors of taxes of the city.

"Section 4. The board of assessors shall assess and include in the tax list and warrant for that municipal year committed by them to the collector of taxes, the assessment upon each estate, as specified in the list committed to said board under the provisions of section three of this act, and such assessment shall be included in the tax bill issued for the annual tax on such estate for that municipal year, or, in case there shall be no such annual tax bill by reason of an estate being exempted from taxation, a bill shall be issued for such assessment in the same manner as if it was an annual tax bill, and such assessment shall be a lien upon each such estate and shall be levied, collected, reassessed to the person to whom such assessment ought to have been made, paid, apportioned, bear interest, and become payable in the same manner as, and shall be a part of, the tax for that year on such estate; but any abatement of any such assessment shall be made only by the board of assessors, upon a certificate recommending such abatement from the board or officer designated under the provisions of section three of this act to make and certify the list to the assessors."

Wells, Superintendent of Streets, March 23, 1898,' and filed in the office of said superintendent, to be watered in whole at the expense of the abutters, and that all streets and portions of streets in the remainder of the city, or lying outside the said red line on said plan be watered in whole at the expense of the city "; and also on April 25, 1898, passed the following order: " That the superintendent of streets be authorized under the provisions of chapter 419 of the acts of 1897 to determine the amount of the assessment for street watering to be laid upon the estates abutting upon the streets included within the part of the city designated to be watered by assessment, by the order approved April 18, 1898 "; both of which orders were approved by the mayor.

The petition further alleged that all the estates belonging to the petitioner described in the exhibit lie within the territory in the central portion of the city bounded by the red line on the plan above referred to, and are of various sizes, shapes, lengths of frontage, depths, and values, and have upon them buildings of various degrees of cost, and adapted for various uses; that certain of the lots are corner lots, and certain are deep lots with narrow frontage, and others are shallow lots with extensive frontage; that subsequently to the passage of these orders the superintendent of streets caused to be made a list of streets which the board of aldermen had determined should be watered, which list specified each estate abutting upon such streets or portion thereof, the number of linear feet of each estate upon such street or portion thereof, the amount per such linear foot of the assessment so authorized, and the amount of such assessment on each estate, and certified and committed such list to the board of assessors of taxes of the city; that the board of assessors assessed and included in the tax list and warrant for the municipal year then current an assessment upon each of the petitioner's estates as specified in the list committed to the board by the superintendent of streets; that the rate to be assessed upon each linear foot of frontage, as specified by § 2 of the statute, had never been estimated and determined by the board of aldermen, but had been illegally estimated and determined by the superintendent of streets; that such superintendent had illegally attempted to fix, and had fixed, the rate at

five cents per linear foot of frontage, and determined the amount of the assessments on the petitioner's estates by such illegally determined rate; and that the assessments on the petitioner's several estates were each and all illegal and invalid, for the following reasons:

" First. Because the rate had never been estimated and determined by the board of aldermen, as required by § 2 of the statute.

" Second. Because the method provided by the statute of determining the rate by assessing upon each linear foot of frontage was unreasonable and unjust, and therefore unlawful.

" Third. Because the division made by the board of aldermen between that portion of the streets in the city where the cost of watering should be paid by the city, and that portion where the cost of watering should be assessed upon the abutters, was unreasonable and unjust.

" Fourth. Because the statute provided for no revision of the assessment, either by abatement or appeal or trial by jury."

The copy of the record of the proceedings of the board of aldermen annexed to its answer, besides containing the two orders set out in the petition, contained a communication from the mayor to the board, dated September 12, 1898, recommending an appropriation for street watering, and an order of the board making such appropriation.

The answer of the superintendent of streets alleged that he was designated by the board of aldermen, under the provisions of § 3 of the statute, by an order of the board, to make, or cause to be made, within a reasonable time after the first day of May, 1898, a list of the streets or portions of streets which the city had determined should be watered, which list should specify each estate abutting upon such street or portion thereof, the number of linear feet of each estate upon such street or portion thereof, the amount per such linear foot of the assessment so authorized, and the amount of such assessment on each estate, and to certify and commit such list to the board of assessors of taxes of the city; that he attended to such duty as the agent designated by the board of aldermen, and made a return of his doings under such order to the board through the mayor; and that his acts and doings in the premises as such agent were approved by the board.

Hearing before *Knowlton*, J., who reported the case for the consideration of the full court; such order to be made as law and justice might require.

*C. F. Choate, Jr.*, for the petitioner.

*T. M. Babson*, for the respondents.

KNOWLTON, J.   This is a petition for a writ of certiorari to quash alleged illegal assessments laid to meet the cost of watering streets in the city of Boston under St. 1897, c. 419.

The first and most important question in the case is whether this statute is constitutional.   The right of the Legislature to raise money by taxation is founded upon Art. 4, c. 1, § 1, of the Constitution of the Commonwealth.   Under this article. there is authority "to impose and levy reasonable duties and excises upon any produce, goods, wares, merchandise, and commodities," etc.   This authority we need not consider in the present case. Secondly, there is authority "to impose and levy proportional and reasonable assessments, rates, and taxes upon all the inhabitants of and persons resident and estates lying within the said Commonwealth."   The watering of streets in thickly settled portions of cities is such a public benefit that it legitimately may be provided for at the public expense.   So far as it promotes the comfort, convenience, and prosperity of the people generally, as distinguished from landowners, it should be provided for by general taxation, which involves the assessment of proportional and reasonable taxes upon all persons and property within the city.   The statute purports to authorize every city, not only to "appropriate money for watering the public ways, or portions thereof, within its limits at the expense, in whole or in part, of the city," but also to "determine that certain other public ways or portions thereof shall be watered at the expense, in whole or in part, of the abutters thereon."   St. 1897, c. 419, § 1.   This last provision calls for another kind of taxation, which is local and special.   Such taxation, under the Constitution, can only exist when there is a special or peculiar benefit to certain real estate, different from that which is received by the inhabitants generally.   The owners of the land upon which such an assessment is made must pay the same share of the general taxes in proportion to the value of their property that other persons pay. As the Constitution requires that taxes shall be proportional and

reasonable, this additional special tax can be justified only when there is a special benefit to property from the expenditure on account of which the assessment is made. *Wright* v. *Boston*, 9 Cush. 233, 234. *Dorgan* v. *Boston*, 12 Allen, 223, 237. *Mount Auburn Cemetery* v. *Cambridge*, 150 Mass. 12, 14. *Norwood* v. *New York & New England Railroad*, 161 Mass. 259, 264. *Boston* v. *Boston & Albany Railroad*, 170 Mass. 95. *Norwood* v. *Baker*, 172 U. S. 269. *Stuart* v. *Palmer*, 74 N. Y. 183, 189. *Sharp* v. *Speir*, 4 Hill, (N. Y.) 76, 82. *Hammett* v. *Philadelphia*, 65 Penn. St. 146, 157. *Tide-water Co.* v. *Coster*, 3 C. E. Green, 518, 527. *Norfolk* v. *Chamberlain*, 89 Va. 196, 213. *Nichols* v. *Bridgeport*, 23 Conn. 189. *Thomas* v. *Gain*, 35 Mich. 155, 162. *Taylor* v. *Palmer*, 31 Cal. 240, 254. *Sheehan* v. *Good Samaritan Hospital*, 50 Mo. 155. In the last analysis the assessment is not laid as a part of the burden of public expenditure put upon the land; for the burdens which are strictly public are to be shared proportionally by all the people, according to the value of their taxable property. It is rather in the nature of a diminution of that which at first is a public burden, by subtracting from it the amount of the special enhancement of value of private property from the expenditure of public money in part for its benefit. It is taxation in the sense that it is a distribution of that which is originally a public burden, growing out of an expenditure primarily for a public purpose.

It is a grave question whether the benefit that comes to abutting property from the watering of the street in front of it is such an improvement to the property that it can be made the subject of an assessment upon it. There must be a real substantial enhancement of value growing out of a public work to warrant an assessment of special taxes upon particular estates on account of it. The watering of streets produces only transitory effects, and makes no permanent change in the condition of the property. It greatly promotes the health and comfort of the people generally, who use the streets from time to time, but its greatest benefit is to the abutting estates as places for residence or the transaction of business. Indeed, so much more important to the occupants than to the general public have been the benefits from watering streets that until lately the expense of the work in this Commonwealth has usually been borne by the abut-

ters, who have procured the watering to be done by private con-
tractors. If a special benefit, accruing from day to day, which
very materially increases the rental value of real estate by reason
of the proximity of the property to the place where the beneficial
work is done, can be treated as an improvement within the reason
of the rule which permits special assessments, then such assess-
ments may be made to pay the expense of watering streets.
With some hesitation, we hold that there is an improvement of
private property, when this work is done by a city regularly
from day to day, which may warrant an asssessment upon the
abutters. It was so held in *State* v. *Reis,* 38 Minn. 371, and in
*Reinken* v. *Fuehring,* 130 Ind. 382, although the cases generally
which uphold such assessments relate to improvements of a per-
manent character. Many improvements from which real estate
receives an incidental advantage are held to justify only general
taxation. *Hammett* v. *Philadelphia,* 65 Penn. St. 146. *Wash-
ington Avenue,* 69 Penn. St. 352. *Erie* v. *Russell,* 148 Penn. St.
384, 386. *Dyar* v. *Farmington,* 70 Maine, 515, 527. *State* v.
*Chamberlin,* 8 Vroom, 388. *Dietz* v. *Neenah,* 91 Wis. 422, 427.

Treating the watering of a street in a city as a work which
may cause a direct, special, and peculiar benefit to abutting
estates, and thus enhance their value so long as it continues, we
come to the question whether the mode of assessment directed
by this statute is within the constitutional power of the Legisla-
ture. Section 2 of the statute is as follows: "If a city shall
determine that the streets, or certain streets or portions of streets
within its limits shall be watered, in whole or in part, at the ex-
pense of the abutters, the expense of the watering of such streets
or portions of streets for that municipal year, and the proportion
of such expense to be borne by abutters, and the rate to be
assessed upon each linear foot of frontage of estate upon such
streets or portions thereof, shall be estimated and determined by
the board of aldermen, and the expense so determined of such
watering to be borne by the abutters shall be assessed in the
manner hereinafter provided, upon the estates abutting on such
streets or portions of streets, in proportion to the number of
linear feet of each estate upon the street or portion thereof so
watered." Section 3 provides for a determination of the amount
of the assessments, either by the board of aldermen, or by that

one of several other specified boards of public officers which the aldermen may designate. Section 4 declares that each assessment shall be a lien upon the estate on which it is laid, and directs the collection of assessments in like manner as other taxes are collected, and provides for abatements.

It is now established by the highest judicial authority that such assessments cannot be so laid upon any estate as to be in substantial excess of the benefit received. The case of *Norwood* v. *Baker*, 172 U. S. 269, contains an elaborate discussion of the subject, with a citation of authorities from many of the States, and holds that a local assessment for an amount in substantial excess of the benefit received is in violation of the Fourteenth Amendment to the Constitution of the United States, inasmuch as it would deprive one of his property without compensation, and so without due process of law. The authority of this case is controlling in all State courts, and if it were not, it is in accordance with sound principles, and with the great weight of authority in other courts. The principles which have often been stated by this court lead to the same result. *Boston* v. *Boston & Albany Railroad*, 170 Mass. 95, 101, and cases cited. The case of *Kingman, petitioner*, 153 Mass. 566, dealt with a legislative distribution of public burdens among different political subdivisions of the Commonwealth, and the language in it must be construed in reference to the facts to which it relates. The right to apportion public burdens among cities, towns, and counties as it deems reasonable, in reference to benefits and to other considerations which are not capable of exact estimation in money, is within the power of the Legislature under the first part of Art. 4, c. 1, § 1, of the Constitution, and is not the same as the right to impose and levy taxes upon individuals. It is of the same nature as the right to create, change, or abolish cities, towns, or other political subdivisions of the Commonwealth.

While these assessments must be founded upon benefits, the courts have generally recognized the difficulty, and in many cases the impracticability of attempting to estimate benefits to estates one by one without some rule or principle of general application which will make the assessments reasonable and proportional, according to the benefits. Accordingly, the determination of such a rule or principle by the Legislature itself,

or by the tribunal appointed by the Legislature to make the assessments, has commonly been upheld by the courts. If, however, its effect plainly is to make an assessment upon any estate substantially in excess of the benefit received, it is set aside. *Weed* v. *Boston*, 171 Mass. 51. *Norwood* v. *Baker, ubi supra.* Assessments of special taxes according to an estimate of the particular benefits to each lot, according to a measurement of the amount of frontage upon a street or sewer, according to a measurement of the area of the lots, and according to a valuation of the property, have all been sustained. *Springfield* v. *Gay,* 12 Allen, 612. *Dorgan* v. *Boston,* 12 Allen, 223. *Downer* v. *Boston,* 7 Cush. 277. *Wright* v. *Boston,* 9 Cush. 223. *Codman* v. *Johnson,* 104 Mass. 491. *Howe* v. *Cambridge,* 114 Mass. 388. *Workman* v. *Worcester,* 118 Mass. 168. *Keith* v. *Boston,* 120 Mass. 108. *Chapin* v. *Worcester,* 124 Mass. 464. *Snow* v. *Fitchburg,* 136 Mass. 183. *Leominster* v. *Conant,* 139 Mass. 384. But, as we have already intimated, the only ground on which they can properly rest is that they are methods reasonably determined upon, by the tribunals charged with the duty of determining, in reference to the ascertainment of the benefits actually received by the different estates on which assessments are to be laid. It may be that in the light of recent decisions some of these cases would have been decided differently, but in general they rest on sound principles, upon the grounds already stated. Most of our cases and our statutes assume under the Constitution that these assessments, like other taxes, are to be reasonable, and in a general sense proportional.

Under the present statute it is implied that the board of aldermen and the tribunal making assessments will proceed upon correct principles, and assess according to the benefits received, unless the requirement that the assessments are to be " in proportion to the number of linear feet of each estate upon the street or portion thereof so watered " is objectionable as founded on a wrong principle. Such requirements in regard to ordinary estates fronting upon streets and sewers have often been upheld. On the other hand, in reference to estates differently situated, they sometimes would call for assessments far beyond any benefit received, and would therefore be unconstitutional and void. *Weed* v. *Boston, ubi supra.* No facts appear in the present case

to show that this rule is not proper in its application to the petitioner's estates, as a method of determining benefits with such approximation to accuracy as can reasonably be required. There may be unoccupied lands in the city which are so situated that they could receive no substantial benefit, either actually or potentially, from the watering of adjacent streets, so long as they remain in their present condition. Assessments made upon such lands might be void; but as the case does not disclose such, we have no occasion to consider them. We see no reason why the Legislature may not authorize a city to water some of its streets at the public expense, and to assess benefits for the watering of others upon abutters, as it deems best. As a result, some landowners get the benefit of watering streets adjacent to their estates without paying for that special benefit. But perfect equality in the distribution of public burdens is not attainable. We are therefore of opinion that, in its application to the facts of the present case, the statute is constitutional.

If the aldermen might cause some of the streets to be watered at the expense of the city and others to be watered at the expense of the abutters, it is not shown that their determination in regard to it was improper.

Although the proceedings were in some respects informal, we see no fatal error in them. We are inclined to agree with the petitioner's counsel in his contention that the determination of the expense of watering streets to be watered in whole or in part at the expense of the abutters, and the proportion of such expense to be borne by the abutters, and the rate to be assessed upon each linear foot of frontage of estates upon such streets or portions thereof, is to be by the board of aldermen, and cannot be delegated to any other board or tribunal. But we are also of opinion that the action of the superintendent of streets in making these assessments and reporting them to the board of aldermen, with the communication of the mayor and the subsequent order making an appropriation, taken in connection with the previous orders, are equivalent to an original determination of these matters by the aldermen themselves. The petitioner shows no such error as to entitle him to a writ of certiorari.

*Petition dismissed.*