ANSEL J. CHENEY *vs.* CITY OF BEVERLY & others.

Essex.     January 27, 1905. — May 17, 1905.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Tax*, Assessments for benefits. *Sewer. Certiorari. Constitutional Law. Statute*, Construction.

If, when a town has adopted a system of sewerage under Pub. Sts. c. 50, § 7, providing for assessments for benefits under § 4 of that chapter, the assessments should be made by the selectmen instead of by the town itself, which here was not decided, this court will not grant a writ of certiorari to quash an assessment because made by the town, especially where the petition is filed more than nine years after the assessment was made.

Pub. Sts. c. 50, § 7, (R. L. c. 49, § 5,) providing for sewer assessments and contemplating that they should be proportional, should be read as if it contained the words "but in 'no case shall an assessment be made that exceeds the special benefit received by the estate assessed," and so construed is constitutional.

PETITION, filed October 20, 1902, and amended May 12, 1903, for a writ of certiorari to quash the proceedings of the mayor and aldermen of the city of Beverly in laying a sewer assessment on certain real estate of the petitioner on Arthur Street in that city.

The case came on to be heard by *Barker*, J., who reserved it upon the amended petition, the return of the respondents and an agreed statement of facts for determination by the full court.

*D. N. Crowley*, for the petitioner.

*H. H. Darling & A. Boyden*, for the respondents.

KNOWLTON, C. J. This is a petition for a writ of certiorari to quash an assessment of a part of the cost of construction of a sewer, upon the estates benefited thereby.

The sewer was constructed as a part of a system of sewers adopted by the town of Beverly by a vote of the inhabitants on March 6, 1893, in accordance with the provisions of the Pub. Sts. c. 50, § 7. This appears not only by the votes of the town, and subsequently by those of the board of aldermen of the city, but by the averment of the petition " that said sewer was constructed as a part of the system of sewerage alleged to have been adopted by the town of Beverly." The adoption of this system is attacked. It is contended, first, that it was adopted without an estimate of the cost of the sewers to be included in it. But it appears by the answer of the respondents and by the statement of agreed facts that an estimate in writing of this cost, made by one Bowditch, an eminent engineer, a copy of which is annexed to the answer, was submitted to the town and was in the custody of the town clerk for the use of the town. It is also agreed that the plans referred to in this report constitute the system of sewerage mentioned in the vote of the town, and that the requisite levels, distances, directions and locations are shown with sufficient fulness upon these plans. It appears that the recommendations of the committee's report in regard to the assessment for the construction of this system of sewerage, which were adopted by the town, were founded upon this estimate of cost made by Mr. Bowditch. In all these particulars, therefore, the adoption

of the system and the provision in regard to assessments meet the requirements of the Pub. Sts. c. 50, § 7.

The St. 1892, c. 245, was in force before the system was adopted, and it is contended that there was no determination that the town should pay a part of the expense of the sewers, as required by § 9 of that chapter (R. L. c. 49, § 27). It is said in the report which was adopted by the town that " the portion of expense to be borne by the town, when the whole system is complete, is estimated to be one-third of the total expense of construction." The assessment then voted to be laid upon the estates of abutters for all sewers constructed as a part of the system, and the ordinance of the city subsequently passed in accordance with this vote, follow this estimate. It seems, therefore, that from the beginning the town and city have been paying for all sewers constructed, including that for which the petitioner's property is assessed, at the rate of one third of the total estimated cost, considering it on the basis of the cost of the whole system. It does not appear that the part to be paid by the town was determined by the selectmen, as the statute directs, but the part is not less than one fourth nor more than two thirds, as the statute prescribes, and it was determined by the town itself, when establishing a system of sewerage and providing for assessments. If the statute contemplates action by the selectmen instead of the town when provision for assessments is made under the Pub. Sts. c. 50, § 7, which we do not decide, we are of opinion that the adoption of the system and the provision for the assessment in this case should not be set aside for such an irregularity, which cannot be presumed to have changed the results. Besides, the length of time that has elapsed since the system was adopted is a sufficient reason for refusing to interfere by a writ of certiorari for such a cause.

The objection that the assessment is not made in reference to the cost of the particular sewer to which it relates is without foundation, for by the terms of the statute, it may be a fixed, uniform rate, based upon the average cost of all the sewers in the system, and this must be a matter of estimation.

Although the constitutionality of the statute has not been argued at length, the petitioner says that the assessment is illegal because it is made without regard to the cost or benefit, and he

cites decisions which hold that a statute which shows on its face an entire disregard of the relation of the benefits to the taxes to be assessed upon the respective estates is unconstitutional. *White* v. *Gove*, 183 Mass. 333, 336. *Weed* v. *Boston*, 172 Mass. 28. *Dexter* v. *Boston*, 176 Mass. 247. A decision sustaining the validity of the assessment necessarily involves the constitutionality of the statute.

The statute authorizes an assessment at " a fixed uniform rate, . . . according to the frontage of such estates on any street or way where a sewer is constructed, or according to the area of such estates within a fixed depth from such street or way, or according to both such frontage and area," etc. Pub. Sts. c. 50, § 7, (R. L. c. 49, § 5.) Then follows a provision that no assessment shall be made in respect to any estate which, by reason of its grade or level, or for any other cause, cannot be drained into the sewer, until such incapacity is removed. In view of the decisions that have been made in this court, in the Supreme Court of the United States, and in many other courts, there is no doubt that an assessment of this kind, founded upon such benefits, should be made proportional to such benefits, and in no case should exceed them. There is often difficulty in establishing a mode of assessment that is reasonable, convenient and practicable, which will not work injustice in its application to individual cases. The best that can be done is to reach a reasonable approximation to accuracy in the disposition of such public burdens, and much must be left to the judgment of the Legislature which determines methods. The language just quoted shows a determination of the Legislature that, in ordinary cases, except under peculiar conditions, an assessment according to the frontage upon the street, or according to the area within a fixed depth from the street, is approximately proportional and equal, according to the benefit received. A statute authorizing an assessment upon a similar basis was upheld in *Sears* v. *Aldermen of Boston*, 173 Mass. 71. See *White* v. *Gove*, 183 Mass. 333, 336. But this decision was put upon the ground that the statute contemplates a division of the city. into parts, so as not to make such an assessment in places where there is no special benefit to the abutters. In *Smith* v. *Mayor & Aldermen of Worcester*, 182 Mass. 232, the court said of an early

statute affecting a part of the city of Worcester, " If it were necessary in order to sustain the constitutionality of the statute, we should read the words ' shall pay such sum as the mayor and aldermen shall assess upon him as his proportionate share of the expenditure ' etc. as meaning a share not in excess of the special and peculiar benefit which his estate is adjudged to receive," etc. In *Hall* v. *Street Commissioners*, 177 Mass. 434, it was held that the word " proportional " in a provision for an assessment means " proportional to the special benefit received," and on this ground the statute was held constitutional. We are of opinion that the Pub. Sts. c. 50, § 7, (R. L. c. 49, § 5,) taken in connection with other parts of the statute, shows an intention that the assessment shall be proportional, and while it determines that the specified methods may be adopted as giving assessments which are proportional under the usual conditions, it was not intended to authorize an assessment of an amount which exceeds the special benefit. We are of opinion that the statute should be construed as if it contained the words, " but in no case shall an assessment be made that exceeds the special benefit received by the estate assessed." So construed it is in conformity with the Constitution of the Commonwealth and the Constitution of the United States.

*Petition dismissed.*